UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

PAWS UP RANCH, LLC et al,

    Plaintiffs,

v.

MARTIN,

    Defendants.

Case No. 2:18-cv-01101-RFB-EJY

**ORDER**

### I. INTRODUCTION

Before the Court is Defendant's Motion for Attorneys' Fees. ECF No. 14.

### II. PROCEDURAL BACKGROUND

Defendant removed this action to federal court on June 21, 2018. ECF No. 1. On June 27, 2018, Plaintiffs filed an Emergency Motion to Remand to State Court, ECF No. 5, and Defendant responded on July 11, 2018, ECF No. 10. The Emergency Motion was withdrawn on July 18, 2018, ECF No. 12, and Defendant filed a Motion for Attorneys' Fees on July 24, 2018, ECF No. 14. Plaintiffs responded on August 7, 2018, ECF No. 15, and Defendant replied on August 14, 2018, ECF No. 16. A hearing was held on this motion and others on January 7, 2019. ECF No. 40.

### III. FACTUAL BACKGROUND

Defendant, who is a citizen of Montana, removed this petition to federal court on the basis of diversity jurisdiction, asserting "upon information and belief" that Paws Up Ranch, LLC ("Paws Up") is a Nevada company because it's one member/officer is QZM, Inc., a Nevada corporation, and that Camel, LLC ("Camel") is a Wyoming limited liability company, and that the Wyoming Secretary of State indicates that Camel is a citizen of Wyoming and Nevada. ECF No. 1 at 2.

| | |
|---|---|
| 1 | Plaintiffs asserted in an Emergency Motion to Remand that both Paws Up and Camel are Montana citizens. ECF No. 5 at 2. Specifically, they stated that Paws Up is a Nevada company with a single member, Monroe Capital Partners, L.L.C. ("MCP"), which transferred 99% of its interests in Paws Up to Nadine Lipson. Id. at 3. Further, MCP also transferred 99% of its interests in Camel to Lipson. Because Lipson is a natural person who "has called Montana her home for more than 20 years and has no present intention of relocating to another state," id. at 3, Plaintiffs asserted that there was no basis for diversity jurisdiction and the case was improperly removed, id. at 4. Plaintiffs attached Lipson's signed affidavit to their motion, stating she is a Montana resident. Ex. 1 at 2, ECF No. 5-2. Plaintiffs requested attorneys' fees pursuant to 28 U.S.C. § 1447(c). Id. at 8. |

In response to the Emergency Motion, Defendant asserted that Lipson's Nevada residency was clear; that Lipson had held herself out in previous actions as a Nevada resident, that she was registered to vote in Nevada along with her husband, who is the owner or manager of several Nevada businesses, that Lipson's businesses are run out of Las Vegas, and that she lists Nevada property as her residence and has maintained a residence in Las Vegas for nearly twenty years. ECF No. 10 at 1-3. Defendant further asserted that he had a good faith basis for removal and that Plaintiffs failed to meet and confer in good faith before filing the Emergency Motion. Id. at 3-6. Finally, Defendant listed several public records, including court filings and affidavits by Lipson under oath, that indicate that Lipson herself has asserted she is a citizen of the State of Nevada. Id. at 6-13.

Plaintiffs withdrew their Emergency Motion one week after Defendant's response, stating that the Emergency Motion was filed "based on facts in their possession at the time" and that Plaintiffs were unaware of the facts raised in Defendant's response. ECF No. 12 at 2-3.

Defendant then filed the instant Motion for Attorneys' Fees, asserting, *inter alia*, that the Emergency Motion was improper and necessitated that Defendant be reimbursed for the time spent in response.

### IV. LEGAL STANDARD

#### A. Equitable Power to Award Attorneys' Fees

Under the "American rule," attorney's fees may not be awarded absent statutory or

contractual authorization, or a finding of bad faith. Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 257 (1975). "[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees 'is part of the original authority of the chancellor to do equity in a particular situation,' and federal courts do not hesitate to exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.'" Hall v. Cole, 412 U.S. 1, 4-5 (1973) (citations omitted).

"Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." Id. at 5 (citations omitted). "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (citations omitted).

"A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure], the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id. at 50.

**B. Rule 11**

Federal Rule of Civil Procedure 11(c) permits a party to move for sanctions if an opposing party has violated the requirements for representations to the court outlined in section 11(b).

Section 11(b) states that "By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

 (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

 (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

 (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P 11(b).

 Section 11(c)(2) states that a motion for sanctions based on a failure to adhere to 11(b) "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Section 11(c)(3) also permits a court on its own initiative to order a party "to show cause why conduct specifically described in its order has not violated Rule 11(b)." Sanctions imposed under 11(c) may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," subject to some limitations. See Fed. R. Civ. P. 11(c)(5).

## V.  DISCUSSION

 Defendant makes several arguments attacking the legitimacy of Plaintiffs' Emergency Motion to Remand. First, Defendant argues that the motion was procedurally improper because

1  Plaintiffs failed to meet and confer in accordance with Local Rule 7-4(b), which requires either a face-to-face meeting, telephonic conference, or video conference, and which is not satisfied by written, electronic, or voice-mail communications. ECF No. 14 at 15; see also D. Nev. Civ. R. IA 1-3(f). Second, Defendant argues that the allegations in the motion itself were frivolous and lacked evidentiary support, and that the motion was filed for an improper purpose. Defendant specifically asserts that Plaintiffs failed their "ethical and legal obligation to form a reasonable inquiry under the circumstances" before filing the Emergency Motion and that in filing this motion, Plaintiffs were "certifying that the allegations and other factual contentions have evidentiary support." Id. at 16. The mere fact that Plaintiffs' counsel was unaware of the contradictions in their motion does not excuse the fact that Plaintiffs themselves were aware of the information. Id. Defendant asserts that because of these failures, Defendant incurred $20,656 in reasonable and appropriate attorneys' fees.

Plaintiffs counter that they did indeed satisfy the meet-and-confer requirement, by exchanging multiple emails with Defendant. ECF No. 15 at 11. They assert that during these exchanges Defendant failed to supply them facts to support his assertion that Plaintiffs were Nevada citizens, id. at 12-13, and that after Defendant completed research to oppose the Emergency Motion, he did not share the newly discovered jurisdictional information, id. at 13. Indeed, Plaintiffs contend that it was Defendant's "insufficient removal petition" coupled with this failure to meet and confer in good faith that resulted in the necessity of extra work for both parties. Id. at 13-16. Additionally, Plaintiffs argue that substantively, the Emergency Motion had merit based on the facts, because it relied on Nadine Lipson's declaration that she was a citizen of Montana and that Lipson herself was not to be expected to know the legal requirements pertaining to domicile under 28 U.S.C. § 1332. Id. at 9-10. Furthermore, Plaintiffs assert that even if counsel had been aware of Lipson's 2013 affidavit in which she states that she considers herself to be a citizen of the State of Nevada, a person's domicile may change over time and the Court in that action did not rely on the affidavit and remanded the case. Id. at 10-11. Finally, Plaintiffs argue that the instant motion was made to disparage Plaintiffs in the eyes of the Court, id. at 16, and that

there is no legal basis for an award of attorneys' fees because 28 U.S.C. § 1447(c) and Rule 11 are inapplicable, and Plaintiffs have not acted in bad faith, id. at 17-20.

In reply, Defendant asserts that he conducted a reasonable inquiry in accordance with law before filing the Removal Petition, that Plaintiffs refused to discuss in good faith the jurisdictional dispute before filing the Emergency Motion, that Defendant "timely and candidly" disclosed all information in his possession at the time, and did not discover Lipson's contradictory statements until after the Emergency Motion was filed, and that Plaintiffs' counsel's ignorance does not relieve Plaintiffs of their duty of candor to the Court. Defendant asserts that the facts make plain that the Plaintiffs engaged in bad faith, and that the Court therefore has the authority to award attorneys' fees.

### A. Bad Faith

The Court does not find that Plaintiffs have engaged in bad faith, and therefore declines to issue sanctions pursuant to its equitable power to do so under such circumstances. While it is undoubtedly troubling that Nadine Lipson represented to this Court in a signed affidavit that she has "lived in and called Montana [her] home for more than 20 years," the evidence does not unequivocally support a finding that Lipson intentionally lied in an effort to avoid removal. It may be true that Lipson considers Montana her home as a practical matter, but that her domicile for the purposes of diversity jurisdiction is in the State of Nevada. Therefore, in the absence of bad faith, the Court finds no basis for awarding attorneys' fees pursuant to its powers in equity.

### B. Rule 11

The analysis under Rule 11, however, does not require the Court to make a finding of bad faith. "[W]hile the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders, many of the other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness

standard. Rule 11, for example, imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." Chambers, 501 U.S. at 47.

The Court finds this record to be sufficient to award attorneys' fees. While the Court notes that Plaintiffs withdrew their Emergency Motion within twenty-one days of its initial filing in accordance with the "safe harbor" provision of section 11(c)(2), Rule 11(c)(3) does allow the Court *itself* to order a party to show cause why conduct has not violated Rule 11(b). The Court finds that the substance of Rule 11(c)(3)'s requirement that the Court "order" a party to show cause has been met here. While the Court itself did not explicitly issue a separate order to show cause, the instant Motion for Attorneys' Fees "specifically described" the conduct in question, and, importantly, the Court discussed its concerns with the parties when ordering the production of certain information from Plaintiffs regarding the motions. Plaintiffs were therefore aware of the Court's specific concerns and were granted ample opportunity to explain why that conduct did not warrant sanction in the form of attorneys' fees, both in their written brief and through oral argument. See ECF No. 40.

The Court finds that Plaintiffs failed to engage in an "inquiry reasonable under the circumstances" before filing their Emergency Motion. Defendant provided Plaintiffs' counsel information via email, before Plaintiffs filed their Emergency Motion, that Nadine Lipson had a Las Vegas address and has been registered to vote in Las Vegas since March 1, 2001, in direct contradiction to Plaintiffs' conclusory statement that Lipson continuously resided in Montana for the past twenty years. Ex. C at 2, ECF No. 14-3. This information should have given Plaintiffs pause and warranted a "reasonable inquiry" as to the question of Lipson's domicile. This is especially so since Plaintiffs attached an affidavit to their motion, signed by Lipson under penalty of perjury, explicitly stating that she was a Montana resident. Ex. 1 at 3, ECF No. 5-2. Regardless whether Plaintiffs' counsel was aware of the contradictory nature of this assertion in light of court filings as yet undiscovered, Lipson's address and voter registration, as provided by opposing counsel, were enough to put Plaintiffs' counsel on notice that there was some doubt as to whether Lipson was a resident of Montana. And Lipson, herself, would obviously have been aware of these discrepancies regarding her residence. Filing the Emergency Motion a mere two hours after

receiving Defendant's email, ECF No. 14 at 6, was objectively unreasonable in light of this new information.

Thus, Plaintiffs failed to represent to the Court that to the "best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the factual contention that Lipson was a resident of Montana had evidentiary support. Fed. R. Civ. P. 11(b)(3). As a consequence of this failure to satisfy Rule 11(b)(3), the Court imposes reasonable attorneys' fees resulting from the violation pursuant to Rule 11(c)(4). The Court finds that a reasonable aware of fees in this case is $10,000.

### VI. CONCLUSION

For the reasons stated above,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Attorneys' Fees (ECF No. 14) is **GRANTED**. Plaintiffs are ordered to pay $10,00.00 to Defendant for attorneys' fees incurred as a result of the Emergency Motion to Remand to State Court (ECF No. 5).

DATED: September 30, 2019.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**