UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PAWS UP RANCH, LLC, et al, | Case No. 2:18-cv-01101-RFB-EJY |
| Plaintiffs, | **ORDER** |
| v. | |
| JONTHAN B. MARTIN, | |
| Defendant. | |

### I.  INTRODUCTION

Before the Court is Plaintiffs' Motion to Certify Questions of Law to the Supreme Court of Nevada (ECF No. 51) and the parties' supplemental briefing on the application of Nevada Revised Statute 613.195(5) and Golden Road Motor Inn, Inc. v. Islam, 376 P.3d 151 (Nev. 2016) to the instant action. The Court denies the motion and concludes that NRS 613.195(5) may not be applied to the noncompete covenant at issue in this case, as such application would be an impermissible retroactive application.

### II.  PROCEDURAL BACKGROUND

On June 21, 2018, Defendant removed this matter from state court. ECF No. 1. Plaintiffs renewed a Motion for Preliminary Injunction and Temporary Restraining Order on January 2, 2019, ECF Nos. 27, 28, and a hearing was held on these and other motions on January 7, 2019, at which the Court denied the motions without prejudice, ECF No. 40. The Court subsequently requested supplemental briefing on the application of Nevada Revised Statutes 613.195(5) and Golden Road Motor Inn, Inc. v. Islam, 376 P.3d 151 (Nev. 2016) to this case. ECF No. 41. The Court stayed discovery pending resolution of the issue. Id. The parties filed their supplemental

briefs on February 15, 2019. ECF Nos. 47, 48. Plaintiffs filed a "reply" to Defendant's brief on March 1, 2019, ECF No. 49, and Defendant filed a "response" to Plaintiffs' initial brief that same day, ECF No. 50.

Also on that day, Plaintiffs filed the instant Motion to Certify Questions of Law to the Supreme Court of Nevada. ECF No. 51. Defendant responded on March 15, 2019, ECF No. 52, and Plaintiffs replied on March 29, 2019, ECF No. 56.

### III. FACTUAL BACKGROUND

In November 2015, Defendant began working for Plaintiff Paws Up Ranch, LLC as General Manager – Guest Relations. The Employment Agreement between Defendant and Plaintiffs became effective on December 22, 2015 and provided for a separately executed Confidentiality, Non-Solicitation and Non-Compete Agreement, which also became effective December 22, 2015. The Non-Compete agreement states in pertinent part:

> In the event of a termination of this agreement by COMPANY or EMPLOYEE, and as specific condition of employment, EMPLOYEE agrees that EMPLOYEE will not compete against COMPANY by performing services for hospitality organizations in any manner within 300 miles of Missoula County, Montana, for a period of three (3) years from the date of the termination of this employment.

Defendant remained employed with Paws Up Ranch, LLC for sixteen months. In April 2017, he voluntarily terminated his employment. In or about March 2018, Defendant left his employment at The Resort at Pelican Hill in Newport, California, and accepted employment as the General Manager of The Ranch, located less than fifty miles from Paws Up Ranch, LLC.

### IV. LEGAL STANDARD

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure ("Rule 5"), a United States District Court may certify a question of law to the Nevada Supreme Court "upon the court's own motion or upon the motion of any party to the cause." Nev. R. App. P. 5(a)—(b). Under Rule 5, the Nevada Supreme Court has the power to answer such a question that "may be determinative of

the cause then pending in the certifying court and ... [where] it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state." Nev. R. App. P. 5(a). Rule 5 also provides that a certification order must specifically address each of six requirements:

> (1) The questions of law to be answered;
> (2) A statement of all facts relevant to the questions certified;
> (3) The nature of the controversy in which the questions arose;
> (4) A designation of the party or parties who will be the appellant(s) and the party or parties who will be the respondent(s) in the Supreme Court;
> (5) The names and addresses of counsel for the appellant and respondent; and
> (6) Any other matters that the certifying court deems relevant to a determination of the questions certified.

Nev. R. App. P. 5(c).

## V.     DISCUSSION

After the hearing at which the Court denied Plaintiffs' preliminary injunction and temporary restraining order seeking to enjoin Defendant's employment with The Ranch, the Court requested supplemental briefing on the application of NRS 613.195(5) and Golden Road Motor Inn, Inc. v. Islam, 376 P.3d 151 (Nev. 2016) to the instant action. ECF No. 41. Before the Court had concluded whether and how NRS 613.195(5) and Golden Road apply to the instant action based on the supplemental briefing, Plaintiffs filed the instant Motion to Certify Questions to the Supreme Court of Nevada. As the issues raised in both sets of briefs are essentially identical, the Court considers both the arguments raised in the supplemental briefing and those raised in the instant motion to determine whether the applicability of the statute and Golden Road can be readily ascertained, and if not, whether it is appropriate to certify the proposed questions to the Supreme Court of Nevada.

/ / /

/ / /

/ / /

Plaintiffs seek to certify the following questions of law to the Supreme Court of Nevada:

> (1) Whether prospective application of NRS 613.195(5) should be effective upon the date the noncompetition covenant was entered into, the date the alleged breach of the noncompetition covenant occurred, or the date the employer brings an action seeking enforcement.
> (2) Whether NRS 613.195(5) is to be applied "retroactively" to noncompetition covenants written prior to the statute's enactment, or is the statute only to be applied prospectively to noncompetition covenants entered into after the statute's enactment; [and]
> (3) Whether NRS 613.195(5) provides an equitable remedy of reformation which is to be applied retroactively since it does not impair vested rights.

ECF No. 51 at 11.

Nevada Revised Statute 613.195 became effective on June 3, 2017 and governs noncompetition covenants. It states, *inter alia*:

> If an employer brings an action to enforce a noncompetition covenant and the court finds the covenant is supported by valuable consideration but contains limitations as to time, geographical area or scope of activity to be restrained that are not reasonable, impose a greater restraint than is necessary for the protection of the employer for whose benefit the restraint is imposed and impose undue hardship on the employee, the court shall revise the covenant to the extent necessary and enforce the covenant as revised. Such revisions must cause the limitations contained in the covenant as to time, geographical area and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than is necessary for the protection of the employer for whose benefit the restraint is imposed.

Nev. Rev. Stat. § 613.195(5).

The statute very clearly overturns a portion of the Supreme Court of Nevada's holding in Golden Rd. Motor Inn, Inc. v. Islam, 376 P.3d 151, 156 (Nev. 2016) in which it reiterated that "an unreasonable provision renders [a] noncompete agreement wholly unenforceable." Thus, while before the statute's passage, the law in Nevada did not permit courts to "blue pencil" a noncompete covenant in order to change or limit unreasonable provisions while still giving the covenant effect, after the passage of § 613.195(5), courts are *required* to "revise the covenant to the extent necessary and enforce" it as revised.

Thus, one critical issue in the present action is whether the statute applies to the noncompete at issue. In the supplemental briefing ordered by the Court, Plaintiffs argue that Golden Road does not preclude the enforcement of the instant noncompete, as its holding as to the unreasonableness of a non-compete agreement that "extends beyond what is necessary to protect [a company's] interest" is still good law, NRS 613.195(5) now permits courts to blue line those provisions to render them reasonable. ECF No. 47 at 4-6. Plaintiffs further assert that Golden Road is inapposite, as it did not provide a *per se* rule as to unreasonableness, but instead reiterated the necessity of a fact-based inquiry to determine reasonableness, and the instant noncompete is reasonable as to time, geographical area, and scope of the activity to be restrained. Id. at 6-10. Further, even if Golden Road were applicable, a Nevada trial court held that it does not apply in the context of a limited specialized industry with a small niche clientele. Id. at 10-12 (citing SSA Architecture, Small Studio Associates, LLC v. Hillyer, No. 18A771578, 2018 WL 5729032, at *1–2 (Nev. Dist. Ct. Sep. 28, 2018)). Finally, Plaintiffs assert that even if the Court finds the noncompete is unreasonable, the statute applies and permits the Court to blue pencil the agreement, as the statute is remedial in nature, and does not create a new substantive right. Id. at 12-15; ECF No. 49 at 8-11.

In his supplemental briefing, Defendant argues Golden Road applies and the statute does not, and that Golden Road mandates a finding that the noncompete is unreasonable and therefore unenforceable. ECF No. 48 at 1. Specifically, Defendant argues that the statute imposes a new duty on courts to revise an unreasonable noncompete, which impairs Defendant's right to have the entire agreement deemed unenforceable in accordance with governing law at the time he entered into the covenant, thereby rendering the statute's application to the noncompete retroactive. Id. at 4-5. Thus, because the legislature did not intend the statute to apply retroactively, it cannot be applied to the instant case. Id. at 5-8. Defendant further argues that the statute created a new right in the right of courts to blue pencil noncompete covenants. Id. at 8. Consequently, Golden Road controls, and the covenant here is unreasonable because like the covenant in that case, it is overbroad as to the scope of the types of employment prohibited, as it precludes Defendant from working for a hospitality organization "in any manner." Id. at 10.

1     As to the instant motion, Plaintiffs reiterate many of the arguments raised in their supplemental briefing, arguing that the statute need not apply because the noncompete is reasonable and therefore enforceable as is. Id. at 5. However, if the Court finds the noncompete contains unreasonable provisions, the statute should apply because it did not create a substantive right but a procedural remedy to effectuate the parties' intention, and therefore its application cannot be considered "retroactive" in the instant case. Id. at 6-7. Further, Plaintiffs argue that because they sought enforcement after the enactment of the statute, and because the "act or even the statute is meant to regulate" is enforcement, no retroactivity analysis is required. Id. at 8 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 263 (2012)). Plaintiffs further argue that the legislative history of the statute support retroactive application. Id. at 9-11. Plaintiffs argue because there is no controlling Supreme Court of Nevada precedent on this question and because the resolution of the question is outcome determinative, the questions they have proposed are ripe for certification. Id. at 11-13.

Defendant responds certification is not appropriate because there is controlling precedent as to retroactivity that governs the application of the statute to the facts at hand, ECF No. 52 at 5, and application of that precedent here indicates the statute has retroactive effect and that it was not intended to be applied retroactively, therefore it cannot be applied to the instant noncompete, id. at 5-7. Further, Defendant responds certification will not resolve important questions of law, because the proposed questions only apply to the instant scenario, that is a noncompete was entered into prior to the statute's enactment, but enforcement was pursued after its enactment. Id. at 7-8. Further, the noncompete by its own terms will run by April 2020, which will likely moot the issue before the Supreme Court of Nevada considers it. Id. at 8-9.  Defendant further argues the motion is premature, as the Court has not yet resolved the issue raised by the supplemental briefing, id. at 9, and relatedly, that Plaintiffs' arguments as to the merits have already been raised and are pending before the Court, id. at 9-12.

As an initial matter, the Court agrees with Defendant that certification to the Supreme Court of Nevada is unnecessary. The Nevada Supreme Court has issued precedent as to the retroactive effect of statutes which provides clear guidance as to how the Court should weigh the issues

presented here. Accordingly, the Court next considers that governing precedent and its implications for the application of NRS 613.195(5) and Golden Road to this case, as presented by the parties' supplemental briefs.

Given the procedural posture of the case, the Court need not and does not determine at this time whether the noncompete covenant is unreasonable. Rather, the purpose of the supplemental briefing was to determine the single issue of whether Section 613.195's "blue pencil" authority applied in this case. The Court has already denied Plaintiffs' emergency motions seeking to enjoin Defendant's employment at The Ranch, and notes that in any event, any injunction is now moot pursuant to the terms of the noncompete covenant, which runs for three years from the date of Defendant's termination in April 2017. However, Plaintiffs have alleged breach of contract for Defendant's alleged breach of the noncompete covenant and seek damages accordingly. Therefore, the question as to whether Section 613.195 or Golden Road applies to this claim is central to the Court's determination as to how this litigation will proceed.

In order to determine the legal scope of Plaintiffs' breach of contract claim, the Court therefore assumes *arguendo*, that the noncompete covenant is unreasonable, and therefore, based on the Supreme Court of Nevada's holding in Golden Road, may only be enforced if the statute applies.[1] The Court turns to Supreme Court of Nevada precedent to answer this inquiry.

Under Nevada precedent, the Court must first determine whether applying the statute to the case "constitutes retroactive operation" of the statute. Sandpointe Apts. v. Eighth Jud. Dist. Ct., 313 P.3d 849, 853 (Nev. 2013). "Substantive statutes are presumed to only operate prospectively, unless it is clear that the drafters intended the statute to be applied retroactively." Id. (internal quotations and citations omitted). By contrast, "courts should apply statutes retroactively when the statute affects only remedies and procedure and does not create new

---

[1] Given the Court's ruling here, the Court will allow the parties to fully brief the issue of the reasonableness of the noncompete clause in a proper dispositive motion which also addresses Plaintiff's unjust enrichment claim. While the parties appear to have fully addressed the issue of the enforceability of the noncompete agreement in this case based upon Golden Road, the Court will give the parties a final opportunity to address the enforceability of the agreement in this case. This can be done on an expedited basis before the close of discovery—to the extent that further discovery is even necessary.

substantive rights." Holdaway-Foster v. Brunell, 330 P.3d 471, 473 (Nev. 2014). The Nevada Supreme Court has noted that, "'[D]eciding when a statute operates "retroactively" is not always a simple or mechanical task.'" Sandpointe Apts., 313 P.3d at 854 (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 273 (1994)). "Broadly speaking, courts 'take a "commonsense, functional" approach' in analyzing whether applying a new statute would constitute retroactive operation." Id. (quoting Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't (PEBP), 179 P.3d 542, 553 (Nev. 2008)). "Central to this inquiry are 'fundamental notions of fair notice, reasonable reliance, and settled expectations.'" Id. (citing PEBP, 179 P.3d at 554) (internal quotations and citations omitted). "Ultimately, a conclusion regarding retroactivity 'comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.'" Id. (quoting Landgraf, 511 U.S. at 270).

A statute operates retroactively not when it merely "upsets expectations based in prior law," id. (quoting Landgraf, 511 U.S. at 269), or "draws upon past facts," id. (quoting PEBP, 179 P.3d at 553), but "when it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past,'" id. (quoting PEBP, 179 P.3d at 553–54). A "vested right" "is some interest in the property that has become fixed and established." Application of Filippini, 202 P.2d 535, 537 (Nev. 1949).

Upon a showing that the statute's application constitutes retroactive operation, the second inquiry is whether the statute should be applied retroactively, nonetheless. There is a "presumption against retroactive legislation." Sandpointe Apts., 313 P.3d at 857 (quoting Landgraf, 511 U.S. at 265). Therefore, "a statute will not be applied retroactively unless the Legislature clearly manifests an intent to apply the statute retroactively, or it clearly, strongly, and imperatively appears from the act itself" that the Legislature's intent cannot be implemented in any other fashion.'" Id. at 858 (internal citations omitted).

The Court finds that application of the statute to the instant noncompete covenant in this case would constitute retroactive operation. First, the Court finds that the application of the statute

1  would be retroactive based upon the timing of the agreement and the enactment of the statute. That
2  is to say, the noncompete agreement in this case was reached in 2015. The statute was not enacted
3  until 2017. The application of the statute to the agreement from a pure timing perspective would
4  clearly represent a retroactive application. The inquiry, however, does not end here.

5  The Court must also consider whether in the broader context the statute is retroactive in
6  terms of whether it creates a substantive right or merely operates to provide a remedy for an
7  existing or vested right. Sandpointe Apts., 313 P.3d at 854. The Court finds that the statute has
8  retroactive effect.

9  First, the Court notes the historical context of the statute at issue. The statute was passed
10 after the Nevada Supreme Court had issued its decision in Golden Road. In Golden Road, the
11 Nevada Supreme Court reiterated the doctrine that portions or sections of a noncompete agreement
12 could not be enforced if any portion of the noncompete agreement was unenforceable. As the
13 Supreme Court put it succinctly, "an unreasonable provision renders [a] noncompete agreement
14 wholly unenforceable." Id. Thus, at the time Section 613.195(5) was drafted and enacted, there
15 existed no substantive right for which there was a remedy or relief for noncompete clauses that
16 contained an unenforceable aspect. Consequently, it cannot be argued that the statute was enacted
17 simply to create a remedy for the violation of an existing substantive or vested right.

18 The Court also rejects the argument that the statute simply seeks to provide a remedy for
19 an agreement between the parties that was supported by valuable consideration despite the
20 unenforceability of the agreement on policy grounds. Under Nevada law, even where parties
21 undisputedly consent to an agreement with valid consideration, a party may not seek relief based
22 upon the agreement if the agreement itself is unenforceable. Birth Mother v. Adoptive Parents, 59
23 P.3d 1233, 1236 (Nev. 2002) (holding that a party may not seek "relief based on [an] agreement"
24 where the "agreement is unenforceable").  Thus, it cannot be argued that Section 613.195(5)
25 simply creates a remedy for an existing substantive right as no remedy or relief can lie for an
26 agreement that is unenforceable.

27 Furthermore, the Court notes that the operation of the statute in terms of its direction to a
28 court demonstrates that a substantive right is being created rather than a remedy. The statute

9

provides explicit instruction to a court encountering an unenforceable noncompete clause: "the court shall revise the covenant to the extent necessary and enforce the covenant as revised." N.R.S. § 613.195(5). This direction requires a court, not the parties, to define the contours of the right to be enforced. Such an action is not simply crafting a provision that reflects the agreement of the parties, since the agreement of the parties is, in such cases, unenforceable as written. Rather, the Court must on its own, taking into consideration the nature of the industry and what would be a reasonable restriction, rewrite and enforce a new agreement. That the Court may use portions of the parties' prior agreement in the final revised agreement does not alter the analysis, because the statute does not require the drafting court to use portions of the prior agreement. The statute simply directs the respective court to draft a reasonable noncompete agreement and enforce it. Id. Consequently, the Court's revision of the noncompete agreement cannot be said to be a reflection of the underlying substantive right of the parties as the court itself is, in the revising, creating and defining the contours of the right to be enforced. This is not a remedial exercise. Thus, the Court finds the statute has retroactive effect.

Finally, the Court finds that there is nothing in the language of the statute or the legislative history which would indicate that the Nevada Legislature intended for the statute to have retroactive effect. The Court finds the absence of any clear direction in the language of the statute or the history to be particularly telling given the Nevada Supreme Court's decision in Golden Road. This to say that the statute clearly was meant to overturn the holding of the case. If the Legislature had intended for the statute to have retroactive effect it could have, and most likely would have, explicitly indicated its intention for the statute to apply retroactively. It did not.

Accordingly, the Court finds that NRS 613.195(5) may not be applied to the noncompete here, in the event the Court finds its provisions unreasonable. The Court lifts the stay on discovery in this case, and the parties should proceed in accordance with the Court's holding.

### VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Certify Questions to the Supreme Court of Nevada (ECF No. 51) is DENIED.

1    **IT IS FURTHER ORDERED** that the stay on discovery in this case is lifted.

2    **IT IS FURTHER ORDERED** that either party may seek an expedited dispositive motion schedule given the Court's ruling in this Order.

DATED: May 31, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**